IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

BUNDY COBB,                          )
                                     )
   Plaintiff,                       )     CIVIL ACTION
                                     )
v.                                   )     FILE NO. _____
                                     )
DOUGLAS   COUNTY,   STATE   OF       )     Jury Demand
GEORGIA,                             )
                                     )
DOUGLAS   COUNTY   BOARD   OF        )
ELECTIONS AND REGISTRATION,          )
                                     )
SYLVANUS  L.  BURNEY  in  his        )
official capacity as member of Douglas )
County   Board   of   Elections   and )
Registration,                        )
                                     )
BOB CAMP in his official capacity as )
member of Douglas County Board of    )
Elections and Registration,          )
                                     )
MEREDITH   HENDRICKS   in   her      )
official capacity as member of Douglas )
County   Board   of   Elections   and )
Registration,                        )
                                     )
INGRID   LANDIS-DAVIS   in   her     )
official capacity as member of Douglas )
County   Board   of   Elections   and )
Registration,                        )
                                     )
JOHN T. LAWRENCE in his official     )
capacity as member of Douglas County )

| | |
|---|---|
| Board of Elections and Registration, | ) |
| LAURIE FULTON in her individual and official capacity as Elections Supervisor for Douglas County, | ) ) ) ) |
| CONSTANCE BOWEN in her individual and official capacity as Voter Registration Clerk for Douglas County, | ) ) ) ) ) ) |
| AND | ) ) |
| WES TALLON in his individual and official capacity as Director of Communications and Community Relations for the Douglas County Board of Commissioners, | ) ) ) ) ) ) ) |
| Defendants. | ) |

## COMPLAINT

Plaintiff Bundy Cobb, for his Complaint against Douglas County, the Douglas County Board of Elections and Registration, Sylvanus L. Burney, Bob Camp, Meredith Hendricks, Ingrid Landis-Davis, John T. Lawrence, Laurie Fulton, Constance Bowen, and Wes Tallon (collectively, Defendants) states as follows:

### NATURE OF THE CLAIMS

1.      This civil rights action seeks declaratory and injunctive relief to redress and prevent the deprivation of the constitutionally protected rights of Mr.

Cobb, and all registered voters in Douglas County, caused by Douglas County's unlawful restrictions on freedom of speech and association protected by the First and Fourteenth Amendments to the United States Constitution.

2.     Specifically, those constitutionally protected rights have been, and continue to be, violated by Defendants' announcement and enforcement of a custom, policy or practice requiring Mr. Cobb and all registered voters in Douglas County to remove their hats, clothing or other personal items referencing the National Rifle Association as a mandatory condition to vote in Douglas County. Defendants not only intentionally discriminate against Mr. Cobb and all registered voters in Douglas County, but also fail to provide the constitutionally required procedural protections to safeguard their constitutional rights.  Mr. Cobb therefore seeks declaratory and injunctive and other relief to abate and correct Defendants' unconstitutional actions.

## JURISDICTION AND VENUE

3.     Mr. Cobb brings this civil rights lawsuit pursuant to the First and Fourteenth Amendments to the United States Constitution. Because this action arises under the Constitution and laws of the United States, this Court has jurisdiction pursuant to 28 U.S.C. § 1331.

4.     This is also an action under the Civil Rights Act of 1871, specifically 42 U.S.C. §1983, to redress the deprivation, under color of state law, of rights, privileges, and immunities secured to Mr. Cobb by the Constitution of the United States, particularly the First and Fourteenth Amendments thereto. The jurisdiction of this Court, therefore, is also invoked under 28 U.S.C. §§ 1343(a)(3)-(4).

5.     This is also a case of actual controversy because Mr. Cobb is seeking a declaration of his rights under the Constitution of the United States. Under 28 U.S.C. §§ 2201 and 2202, this Court may declare the rights of Mr. Cobb and grant further necessary and proper relief, including preliminary and permanent injunctive relief, pursuant to Fed. R. Civ. P. 65.

6.     This Court has personal jurisdiction over the Defendants because the individual Defendants reside in the Northern District of Georgia, the corporate Defendants' principal places of business are in the Northern District of Georgia, and all Defendants have minimum contacts in the Northern District of Georgia.

7.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(1)-(2) and (c) because it is the judicial district where Defendants reside, and "in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. §§ 1391(b), 1390(a)(2).

## THE PARTIES

8.     Bundy Cobb is a United States citizen and a resident of Georgia, residing in Douglasville, Georgia, in Douglas County, within the jurisdiction of this Court.

9.     Mr. Cobb is registered to vote in Douglas County, Georgia.

10.     Mr. Cobb served in the United States Army from 1967 to 1970, including one tour in Vietnam, after which he was honorably discharged.

11.     Mr. Cobb is a member of the National Rifle Association (NRA) and is an NRA Certified Instructor.

12.     Mr. Cobb owns and operates True Aim Defense, Inc., a company that provides firearm instruction, responsibility and safety training.

13.     Defendant Douglas County (County) is a subdivision of the State of Georgia.  Defendant County is a jural entity that can sue and be sued.  O.C.G.A. § 36-1-3.

14.     Defendant Douglas County Board of Elections and Registration (Board) is a board created by Georgia Law.  O.C.G.A. § 21-2-40(b).

15.     Defendant Sylvanus L. Burney is a member of Defendant Board and is being sued in his official capacity.

16.     Defendant Bob Camp is a member of Defendant Board and is being sued in his official capacity.

17.     Defendant Meredith Hendricks is a member of Defendant Board and is being sued in her official capacity.

18.     Defendant Ingrid Landis-Davis is a member of Defendant Board and is being sued in her official capacity.

19.     Defendant John T. Lawrence is a member of Defendant Board and is being sued in his official capacity.

20.     Defendant Board's powers and duties are proscribed by law. O.C.G.A. §§ 21-2-70 *et seq*; O.C.G.A. § 21-2-40(b).

21.     Defendant Board has "the powers and duties of the election superintendent relating to the conduct of primaries and elections. . ." which are set forth at Georgia Code Section 21-2-70.  O.C.G.A. § 21-2-40(b).

22.     Defendant Board, and its members, Defendants Burney, Camp, Hendricks, Landis-Davis and Lawrence, are responsible for, among other things, "mak[ing] and issu[ing] such rules, regulations, and instructions, consistent with law, including the rules and regulations promulgated by the State Election Board, as [they] may deem necessary for the guidance of poll officers, custodians, and electors in primaries and elections[.]"  O.C.G.A. § 21-2-70(7).

23.    Defendant Board, and its members, Defendants Burney, Camp, Hendricks, Landis-Davis and Lawrence, are responsible for, among other things, "instruct[ing] poll officers and others in their duties, calling them together in meetings whenever deemed advisable, and to inspect systematically and thoroughly the conduct of primaries and elections in the several precincts of [their] county to the end that primaries and elections may be honestly, efficiently, and uniformly conducted[.]" O.C.G.A. § 21-2-70(8).

24.    Defendant Board, and its members, Defendants Burney, Camp, Hendricks, Landis-Davis and Lawrence, are responsible for, among other things, "conducting all elections in such a manner as to guarantee the secrecy of the ballot, and perform other duties as may be prescribed [sic] by law[,]" "appointing and conducting training for poll managers and poll workers in accordance with applicable laws and regulations[,]" and "making and issuing such rules, regulations and instructions consistent with law as deemed necessary for the guidance of poll officers, custodians and electors in primaries and elections." *See* http://www.celebratedouglascounty.com/view/departments/view_dept/&cdept=48 &department=Elections%20and%20Voter%20Registration (last visited December 5, 2014).

25.    Defendant Laurie Fulton is the Elections Supervisor for Defendant County and is being sued in her individual and official capacity.

26.    Defendant Fulton works at 8700 Hospital Drive, First Floor, Douglas County Courthouse, Douglasville, Georgia 30134.

27.    Defendant Fulton is responsible for, among other things, "conducting all elections in such a manner as to guarantee the secrecy of the ballot, and perform other duties as may be prescribed [sic] by law[,]" "appointing and conducting training for poll managers and poll workers in accordance with applicable laws and regulations[,]" and "making and issuing such rules, regulations and instructions consistent with law as deemed necessary for the guidance of poll officers, custodians and electors in primaries and elections." *See* http://www.celebratedouglascounty.com/view/departments/view_dept/&cdept=48 &department=Elections%20and%20Voter%20Registration (last visited December 5, 2014).

28.    Defendant Constance Bowen is a Voter Registration Clerk for Defendant County and is being sued in her individual and official capacity.

29.    Defendant Bowen works for Defendant Board at 8700 Hospital Drive, First Floor, Douglas County Courthouse, Douglasville, Georgia 30134.

30.     Defendant Wes Tallon is the Director of Communications and Community Relations for Douglas County Board of Commissioners and is being sued in his individual and official capacity.

31.     Defendant Tallon works at 8700 Hospital Drive, Third Floor, Douglas County Courthouse, Douglasville, Georgia 30134.

32.     Defendants Fulton, Burney, Camp, Hendricks, Landis-Davis, Lawrence, Bowen and Tallon acted under color of law at all times material to this Complaint.

33.     Defendant County is responsible for, among other things, the customs, policies and practices of Defendant Board, the members of Defendant Board, Defendant County Elections Supervisor, the Director of Communications and Community Relations for Douglas County Board of Commissioners, and all agents, employees, and volunteers of Defendant County and Defendant Board.

<u>FACTUAL BACKGROUND</u>

34.     Mr. Cobb owns a khaki colored hat with the words "NRA Instructor" embroidered on it in black thread.

35.     Mr. Cobb wears his NRA Instructor hat daily.

36.     Mr. Cobb wears his NRA Instructor hat to show his support for the NRA and to advertise his firearm instruction, responsibility and safety business, True Aim Defense, Inc., and his position as an NRA Certified Instructor.

37.     On October 24, 2014, Mr. Cobb went to the Douglas County Courthouse (Courthouse) at 8700 Hospital Drive, Douglasville, Georgia 30134, to vote in the 2014 general election.

38.     When he arrived at the Courthouse on October 24, 2014, and at all times relevant to the allegations set forth in this Complaint, Mr. Cobb was wearing khaki pants, a black t-shirt with the imprint of an eagle and American flag on it, a white button down shirt over the t-shirt, and his NRA Instructor hat.  A picture of Mr. Cobb in the clothing and hat he wore on October 24, 2014 is attached as Exhibit A.

39.     Upon arrival at the Courthouse, Mr. Cobb went to the room designated as the polling location.

40.     Mr. Cobb waited at the entrance of the polling location until a poll worker stationed at the door to the polling location (Unidentified Poll Worker No. 1) told Mr. Cobb that he could enter.

41.     After being told he could enter the polling location, Mr. Cobb entered the room.

42.    Unidentified Poll Worker No. 1 said nothing to Mr. Cobb about the NRA Instructor hat he was wearing.

43.    Mr. Cobb proceeded to the check-in table and provided another poll worker (Unidentified Poll Worker No. 2) his driver's license.

44.    In turn, Unidentified Poll Worker No. 2 provided Mr. Cobb with paperwork for him to complete.

45.    Mr. Cobb started filling out the paperwork.

46.    Unidentified Poll Worker No. 2 said nothing to Mr. Cobb about the NRA Instructor hat he was wearing.

47.    Defendant Bowen was sitting next to Unidentified Poll Worker No. 2.

48.    Defendant Bowen was working the computer used to verify the information on an individual's voter registration certificate and to issue an electronic ballot.

49.    As Mr. Cobb was completing the paperwork, Defendant Bowen told Mr. Cobb he had to remove his NRA Instructor hat in the polling location.

50.    Defendant Bowen, as the Voter Registration Clerk operating the computer used to verify the information on an individual's voter registration certificate knew that Mr. Cobb was registered to vote in Defendant County and thus, had the right to vote in the 2014 general election.

51.   Defendant Bowen would not allow Mr. Cobb to vote in the general election on October 24, 2014, unless he removed his NRA Instructor hat.

52.   Mr. Cobb was shocked and confused why he would have to remove his NRA Instructor hat.

53.   Because he wanted to vote and was told that he could not remain in the polling location and vote unless he removed his NRA Instructor hat, Mr. Cobb removed his hat.

54.   After removing his hat, but before casting his ballot, Mr. Cobb noticed that another voter was permitted to wear his hat when he cast his ballot.

55.   Mr. Cobb asked Defendant Bowen why he had to remove his NRA Instructor hat as a condition to vote, while the other voter did not have to remove his hat as a condition to vote.

56.   In response, Defendant Bowen told Mr. Cobb, "Your hat has NRA on it."

57.   Mr. Cobb asked Defendant Bowen, "What difference does that make?"

58.   In response, Defendant Bowen told Mr. Cobb that his NRA Instructor hat was "considered to be campaigning."

59.    Mr. Cobb expressed his disagreement with Defendant Bowen's assertion that his NRA Instructor hat was campaigning and told her that it was "ridiculous" that he was required to remove his NRA Instructor hat as a condition to vote.

60.    However, because he wanted to exercise his constitutionally protected right to vote (and as Mr. Cobb believes, his duty to vote), Mr. Cobb kept his NRA Instructor hat off while in the polling location.

61.    Mr. Cobb cast his ballot and left the polling location.

62.    On October 24, 2014, Mr. Cobb was never offered a provisional ballot.

63.    Several hours later, Mr. Cobb re-entered the Courthouse with a television reporter and cameraman from WATL Fox 5.

64.    Mr. Cobb and the reporter spoke with Defendant Fulton, Elections Supervisor for Defendant County.

65.     Mr. Cobb asked Defendant Fulton why his NRA Instructor hat is considered campaigning.

66.    In response, Defendant Fulton stated that in Defendant County, Mr. Cobb's NRA Instructor hat is considered to be campaigning because the NRA is perceived to be "associated with the Republican party."

67.   Mr. Cobb told Defendant Fulton that her statement was ridiculous, that he knows a lot of Democrats that are members of the NRA, and that he neither endorses nor supports any party or candidate when he wears his NRA Instructor hat.

68.   Mr. Cobb told Defendant Fulton that his NRA Instructor hat advertises that he is an NRA Instructor and shows his support for the Second Amendment and firearm safety.

69.   Defendant Fulton told Mr. Cobb that earlier in the week a voter complained about another person at the same polling location wearing an NRA hat and that person was also asked to remove his NRA hat.

70.   Defendant Fulton told Mr. Cobb that "they" were using an abundance of caution in making him remove his NRA Instructor hat.

71.   Defendant Fulton stated, "Courts have found that anything that suggests associated [sic] with the NRA, in many people's perceptions, is associated with the Republican Party."

72.   Defendant Fulton further stated that Defendant County does not want to appear to be showing "favoritism" to one party, so people wearing NRA hats are asked to remove them before being allowed to vote.

73.     According to Defendant Fulton's statements, Defendant County, Defendant Board and its members, and Defendant Fulton herself as Elections Supervisor for Defendant County, issued a per se ban on all hats, clothing and personal items referencing the NRA in all polling locations in Defendant County.

74.     Subsequently, Defendant Tallon reiterated Defendant County's official custom, policy or practice of refusing to permit a voter registered in Defendant County to vote if he is wearing an NRA hat, clothing or other personal item.

75.     Defendant Tallon publicly stated that Mr. Cobb's NRA Instructor hat "represented an organization that had certain well-advertised views and was active in the Georgia gubernatorial campaigning."

76.     Despite the Defendant County custom, policy or practice and the statements of Defendants, the NRA is not a political party and is not recognized as a political party by the State of Georgia.

77.     The NRA does not endorse candidates from any political party.

78.     The NRA Political Victory Fund, a distinct political action entity, evaluates and supports candidates from all political parties.  For example, in the 2014 general election the NRA Political Victory Fund endorsed, among others, Sanford Bishop (Democrat) for U.S. House – District 2, John Barrow (Democrat)

for U.S. House – District 12, Mike Glanton (Democrat) for State House – District 75, Colver "Rusty" Kidd (Independent) for State House – District 145, Debbie G. Buckner (Democrat) for State House – District 137, and R.B. "Bob" Bryant (Democrat) for State House – District 162.

79.   Neither the words "National Rifle Association" nor the acronym "NRA" appeared on the ballot for the 2014 general election in Defendant County.

80.   The ballot for the 2014 general election in Defendant County did not refer to the Second Amendment, the NRA, or firearms in any manner.

81.   Any person that "solicit[s] votes in any manner or by any means or method" or "distribute[s] or display[s] any campaign literature, newspaper, booklet, pamphlet, card, sign, paraphernalia, or any other written or printed matter of any kind," or "solicit[s] signatures for any petition or conduct[s] any exit poll or public opinion poll with voters on any day in which ballots are being cast" . . . "(1) [w]ithin 150 feet of the outer edge of any building within which a polling place is established; (2) [w]ithin any polling place; or (3) [w]ithin 25 feet of any voter standing in line to vote at any polling place" "shall be guilty of a misdemeanor." O.C.G.A. § 21-2-414.

82.   In wearing his NRA Instructor hat, Mr. Cobb did not solicit votes.

83.    In wearing his NRA Instructor hat, Mr. Cobb did not distribute any campaign literature, newspaper, booklet, pamphlet, card, sign, paraphernalia or any other written or printed matter of any kind.

84.    In wearing his NRA Instructor hat, Mr. Cobb did not display any campaign literature, newspaper, booklet, pamphlet, card, sign, paraphernalia or any other written or printed matter of any kind.

85.    In wearing his NRA Instructor hat, Mr. Cobb did not solicit signatures for any petition or conduct any exit poll or public opinion poll with voters on any day in which ballots were being cast.   According to the customs, policies and practices of Defendant County, had Mr. Cobb refused to remove his NRA Instructor hat in the polling location he would have been reported for the misdemeanor crime of electioneering and subject to prosecution.

<u>CONSTITUTUIONAL STANDARDS</u>

86.    The right to vote is a fundamental right and thus, if a custom, policy or practice infringes on the right to vote it must meet strict scrutiny.   *See e.g. Kramer v. Union Free Sch. Dist.*, 395 U.S. 621, 626 (1969).

87.    Under 42 U.S.C. § 1983, every person who, under color of state law, subjects any citizen of the United States to the deprivation of "rights, privileges, or

immunities secured by the Constitution and laws, . . ..” shall be liable to the injured party.

88.     The First Amendment protects the freedom to speech and association. U.S. Const. amend I.  The First Amendment prohibits the vesting of unbridled discretion in a government official.  *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 133 (U.S. 1992); *Shuttlesworth v. Birmingham*, 394 U.S. 147, 150 (1069).  Electioneering laws that allow election officials and workers to exercise standardless discretion in making and enforcing electioneering laws violate an individual’s rights of speech and association.

89.     The Fourteenth Amendment prohibits a state from depriving any person of life, liberty, or property, without due process of law and from denying any person within its jurisdiction the equal protection of the laws.  U.S. Const. amend XIV.  Electioneering laws that are not both viewpoint neutral and narrowly tailored to serve a significant government interest, violate the Fourteenth Amendment. *Burson v. Freeman* 504 U.S. 191, 196-97 (1992).

## COUNT ONE

### Violation of Plaintiff’s First Amendment Rights of Freedom of Speech and Association against Defendant Fulton in her Individual Capacity

90.     Plaintiff hereby realleges and incorporates by reference the allegations made in paragraphs 1 through 89.

Page 18 of 37

91.    The First Amendment to the United States Constitution guarantees individuals the right to free speech and association.

92.    Defendant Fulton, either by evil motive or intent, or through reckless or callous indifference to the federally protected rights of Mr. Cobb and all registered voters in Defendant County, harassed, threatened, silenced and chilled their rights to freedom of speech and association by refusing to let Mr. Cobb vote unless he removed his NRA Instructor hat.

93.    Defendant Fulton, either by evil motive or intent, or through reckless or callous indifference to the federally protected rights of Mr. Cobb and all registered voters in Defendant County, harassed, threatened, silenced and chilled their rights to freedom of speech and association by announcing a custom, policy or practice to improperly enforce Georgia's electioneering laws.

94.    Defendant Fulton, either by evil motive or intent, or through reckless or callous indifference to the federally protected rights of Mr. Cobb and all registered voters in Defendant County, harassed, threatened, silenced and chilled their rights to freedom of speech and association by enforcing a custom, policy or practice to improperly enforce Georgia's electioneering laws.

95.    The actions of Defendant Fulton create an ongoing chilling effect on the speech and association of Mr. Cobb and all registered voters in Defendant

County in violation of their rights under the First Amendment to the United States Constitution. Because Georgia law allows for the arrest, imprisonment and a fine of one who electioneers, Defendant Fulton through her actions chilled or silenced persons of ordinary firmness from First Amendment activities. O.C.G.A. § 21-2-414.

96.     The actions of Defendant Fulton create an ongoing chilling effect on the speech and association of Mr. Cobb and all registered voters in Defendant County in violation of their rights under the First Amendment to the United States Constitution. Because Georgia law allows for the arrest, imprisonment and a fine of one who electioneers, Defendant Fulton's actions chill and silence persons of ordinary firmness from future First Amendment activities. O.C.G.A. § 21-2-414.

97.     Defendant Fulton, either by evil motive or intent, or through reckless or callous indifference to the protected rights of Mr. Cobb and all registered voters in Defendant County caused and will cause Defendant County poll workers to harass, threaten, silence, and chill the speech and association of Mr. Cobb and all registered voters in Defendant County by directing the poll workers to improperly enforce Georgia's electioneering laws.

98.     Defendant Fulton, either by evil motive or intent, or through reckless or callous indifference to the protected rights of Mr. Cobb and all registered voters

in Defendant County, caused and will cause Defendant County poll workers to harass, threaten, silence, and chill the speech and association of Mr. Cobb and all registered voters in Defendant County by failing to train poll workers in the proper enforcement of Georgia's electioneering laws.

WHEREFORE, pursuant to 42 U.S.C. § 1983, Plaintiff requests compensatory and punitive damages against Defendant Fulton because her ongoing conduct is malicious, oppressive and in reckless disregard for Plaintiff's rights. Plaintiff further seeks costs, equitable relief, attorneys' fees and any and all further relief as this Court deems just and proper.

## COUNT TWO

### Violation of Plaintiff's First Amendment Rights of Freedom of Speech and Association against Defendant Bowen in Her Individual Capacity

99.    Plaintiff hereby realleges and incorporates by reference the allegations made in paragraphs 1 through 98.

100.   The First Amendment to the United States Constitution guarantees individuals the right to free speech and association.

101.   Defendant Bowen either by evil motive or intent, or through reckless or callous indifference to the federally protected rights of Mr. Cobb and all registered voters in Defendant County, harassed, threatened, silenced and chilled

their rights to freedom of speech and association by refusing to let Mr. Cobb vote unless he removed his NRA Instructor hat.

102.   Defendant Bowen either by evil motive or intent, or through reckless or callous indifference to the federally protected rights of Mr. Cobb and all registered voters in Defendant County, harassed, threatened, silenced and chilled their rights to freedom of speech and association by announcing a custom, policy or practice that improperly enforces Georgia's electioneering laws.

103.   Defendant Bowen either by evil motive or intent, or through reckless or callous indifference to the federally protected rights of Mr. Cobb and all registered voters in Defendant County, harassed, threatened, silenced and chilled their rights to freedom of speech and association by enforcing a custom, policy or practice that improperly enforces Georgia's electioneering laws.

104.   The actions of Defendant Bowen create an ongoing chilling effect on the speech and association of Mr. Cobb and all registered voters in Defendant County in violation of their rights under the First Amendment to the United States Constitution.  Because Georgia law allows for the arrest, imprisonment and a fine of one who electioneers, Defendant Bowen's actions chilled and silenced persons of ordinary firmness from First Amendment activities.  O.C.G.A. § 21-2-414.

105.   The actions of Defendant Bowen create an ongoing chilling effect on the speech and association of Mr. Cobb and all registered voters in Defendant County in violation of their rights under the First Amendment to the United States Constitution.  Because Georgia law allows for the arrest, imprisonment and a fine of one who electioneers, Defendant Bowen's actions chill and silence persons of ordinary firmness from future First Amendment activities.  O.C.G.A. § 21-2-414.

106.   Defendant Bowen, either by evil motive or intent, or through reckless or callous indifference to the protected rights of Mr. Cobb and all registered voters in Defendant County, caused and will cause Defendant County poll workers to harass, threaten, silence, and chill the speech and association of Mr. Cobb and all registered voters in Defendant County by directing the poll workers to improperly enforce Georgia electioneering laws.

WHEREFORE,  pursuant  to  42  U.S.C.  §  1983,  Plaintiff  requests compensatory  and  punitive  damages  against  Defendant  Bowen  because  her ongoing conduct is malicious, oppressive and in reckless disregard for Plaintiff's rights.  Plaintiff further seeks costs, equitable relief, attorneys' fees and any and all further relief as this Court deems just and proper.

## COUNT THREE

**Violation of Plaintiff's First Amendment Rights of Freedom of Speech and Association against Defendant Tallon in His Individual Capacity**

107.   Plaintiff hereby realleges and incorporates by reference the allegations made in paragraphs 1 through 106.

108.   The First Amendment to the United States Constitution guarantees individuals the right to free speech and association.

109.   Defendant Tallon, either by evil motive or intent, or through reckless or callous indifference to the federally protected rights of Mr. Cobb and all registered voters in Defendant County, harassed, threatened, silenced and chilled their rights to freedom of speech and association by announcing a custom, policy or practice to  improperly enforce Georgia's electioneering laws.

110.   Defendant Tallon, either by evil motive or intent, or through reckless or callous indifference to the federally protected rights of Mr. Cobb and all registered voters in Defendant County, harassed, threatened, silenced and chilled their rights to freedom of speech and association by enforcing a custom, policy or practice to improperly enforce Georgia's electioneering laws.

111.   The actions of Defendant Tallon create an ongoing chilling effect on the speech and association of Mr. Cobb and all registered voters in Defendant County in violation of their rights under the First Amendment to the United States

Constitution.  Because Georgia law allows for the arrest, imprisonment and a fine of one who electioneers, Defendant Tallon through his actions chilled and silenced persons of ordinary firmness from First Amendment activities.  O.C.G.A. § 21-2-414.

112.   The actions of Defendant Tallon create an ongoing chilling effect on the speech and association of Mr. Cobb and all registered voters in Defendant County in violation of their rights under the First Amendment to the United States Constitution.  Because Georgia law allows for the arrest, imprisonment and a fine of one who electioneers, Defendant Tallon's actions chill and silence persons of ordinary firmness from future First Amendment activities.  O.C.G.A. § 21-2-414.

113.   Defendant Tallon, either by evil motive or intent, or through reckless or callous indifference to the protected rights of Mr. Cobb and all registered voters in Defendant County caused and will cause Defendant County poll workers to harass, threaten, silence, and chill the speech and association of Mr. Cobb and all registered voters in Defendant County by directing the poll workers to improperly enforce Georgia's electioneering laws.

WHEREFORE, pursuant to 42 U.S.C. § 1983, Plaintiff requests compensatory and punitive damages against Defendant Tallon because his ongoing conduct is malicious, oppressive and in reckless disregard for Plaintiff's rights.

Plaintiff further seeks costs, equitable relief, attorneys' fees and any and all further relief as this Court deems just and proper.

## COUNT FOUR

### Due Process Claim against Defendant Fulton

114.   Mr. Cobb hereby realleges and incorporates by reference the allegations made in paragraphs 1 through 113.

115.   Mr. Cobb has a Fourteenth Amendment right to due process of the law before government deprives him of life, liberty or property.

116.   Mr. Cobb has protectable liberty interests – fundamental rights in fact – in free speech and association under the First Amendment, due process of the law under the Fourteenth Amendment, and the right to vote.

117.   Defendant Fulton, either by evil motive or intent, or through reckless or callous indifference to the federally protected rights of Mr. Cobb and all registered voters in Defendant County, announced a custom, policy or practice of exercising standardless discretion over what expressive conduct is characterized as electioneering, leaving poll workers and agents, employees and volunteers of Defendant County and Defendant Board free to censor ideas and enforce their own personal preferences.

118.   Defendant Fulton failed to develop objective standards to ensure that registered voters in Defendant County such as Mr. Cobb are not disenfranchised, harassed, or otherwise deprived of constitutional rights without due process of the law.

119.   Based on the discretionary standard announced and enforced by Defendant Fulton, voters have no certain method of determining whether their hats, clothing or other personal items are prohibited electioneering.

120.   The conduct of Defendant Fulton deprived Mr. Cobb and all registered voters in Defendant County of due process under the laws of the United States and caused them to suffer injuries and damages, including, but not limited to, emotional distress, anguish and the loss of freedom.

121.   Defendant Fulton's continued enforcement of a custom, policy or practice of exercising standardless discretion over what expressive conduct is characterized as electioneering, deprives Mr. Cobb and all registered voters in Defendant County of due process under the laws of the United States when they vote in all future elections in Defendant County, and the deprivation will directly and proximately cause them to suffer injuries and damages, including, but not limited to, emotional distress, anguish and the loss of freedom.

WHEREFORE, pursuant to 42 U.S.C. § 1983, Plaintiff requests compensatory and punitive damages against Defendant Fulton because her ongoing conduct is malicious, oppressive and in reckless disregard for Plaintiff's rights. Plaintiff further seeks costs, equitable relief, attorneys' fees and any and all further relief as this Court deems just and proper.

## COUNT FIVE

### Violation of Plaintiff's Right to Equal Protection Under the Law against Defendant Fulton

122.   Mr. Cobb hereby realleges and incorporates by reference the allegations made in paragraphs 1 through 121.

123.   Mr. Cobb's Fourteenth Amendment right to equal protection under the law protects him from intentional and arbitrary discrimination.

124.   Enforcement of Georgia Code Section 21-2-414 must be viewpoint neutral.

125.   Defendant Fulton admitted that Defendant County and Defendant Board have a blanket custom, policy or practice of prohibiting NRA hats, clothing or other personal items at polling locations.

126.   Defendant Fulton singled out the NRA and instructed poll workers to ban NRA hats, clothing and personal items from polling locations.

127.   Defendant Fulton has not given similar instructions to poll workers regarding apparel advertising similarly situated civic entities such as labor unions, trade associations, corporations or any other organization.

128.   Defendant Fulton, by evil motive or intent, or through reckless or callous indifference to the federally protected rights of Mr. Cobb and all registered voters in Douglas County announced a custom, policy or practice to intentionally discriminate against them by using Georgia electioneering laws to impose barriers that thwart the exercise of the constitutional rights of Mr. Cobb and all registered voters in Douglas County based on his, or their, association with the NRA.

129.   Defendant Fulton deprived Mr. Cobb and all registered voters in Defendant County of equal protection under the laws of the United States and the deprivation directly and proximately caused them to suffer injuries and damages, including, but not limited to, emotional distress, anguish and the loss of freedom.

130.   Defendant Fulton's continued enforcement of a custom, policy or practice that results in viewpoint discrimination deprives Mr. Cobb and all registered voters in Defendant County of equal protection under the laws of the United States when they vote in all future elections in Defendant County, and the deprivation will directly and proximately cause them to suffer injuries and

damages, including, but not limited to, emotional distress, anguish and the loss of freedom.

WHEREFORE, pursuant to 42 U.S.C. § 1983, Plaintiff requests compensatory and punitive damages against Defendant Fulton because her ongoing conduct is malicious, oppressive and in reckless disregard for Plaintiff's rights. Plaintiff further seeks costs, equitable relief, attorneys' fees and any and all further relief as this Court deems just and proper

## COUNT SIX

### Violation of Plaintiff's Right to Equal Protection Under the Law against Defendant Bowen

131.   Mr. Cobb hereby realleges and incorporates by reference the allegations made in paragraphs 1 through 130.

132.   Mr. Cobb's Fourteenth Amendment right to equal protection under the law protects him from intentional and arbitrary discrimination.

133.   Enforcement of Georgia Code Section 21-2-414 must be viewpoint neutral.

134.   Defendant Bowen enforced the blanket custom, policy or practice of Defendant County and Defendant Board which prohibits NRA hats, clothing or other personal items at polling locations.

135.   Defendant Bowen singled out the NRA and refused to let voters registered in Defendant County vote if they wore NRA hats, clothing and personal items in the polling location at the Courthouse.

136.   Defendant Bowen permitted voters registered in Defendant County to vote if they wore apparel advertising civic entities similarly situated to the NRA, such as labor unions, trade associations, corporations, or any other organization.

137.   Defendant Bowen, by evil motive or intent, or through reckless or callous indifference to the federally protected rights of Mr. Cobb and all registered voters in Douglas County announced a custom, policy or practice to intentionally discriminate against them by using Georgia electioneering laws to impose barriers that thwart the exercise of the constitutional rights of Mr. Cobb and all registered voters in Douglas County based on his, or their, association with the NRA.

138.   Defendant Bowen deprived Mr. Cobb and all registered voters in Defendant County of equal protection under the laws of the United States and the deprivation directly and proximately caused them to suffer injuries and damages, including, but not limited to, emotional distress, anguish and the loss of freedom.

139.   Defendant Bowen's continued enforcement of a custom, policy or practice that results in viewpoint discrimination deprives Mr. Cobb and all registered voters in Defendant County of equal protection under the laws of the

United States when they vote in all future elections in Defendant County, and the deprivation will directly and proximately cause them to suffer injuries and damages, including, but not limited to, emotional distress, anguish and the loss of freedom.

WHEREFORE, pursuant to 42 U.S.C. § 1983, Plaintiff requests compensatory and punitive damages against Defendant Bowen because her ongoing conduct is malicious, oppressive and in reckless disregard for Plaintiff's rights. Plaintiff further seeks costs, equitable relief, attorneys' fees and any and all further relief as this Court deems just and proper.

## COUNT SEVEN

### Section 1983 *Monell* Claim against Defendants Douglas County and the Douglas County Board of Elections and Registration

140. Mr. Cobb hereby realleges and incorporates by reference the allegations made in paragraphs 1 through 139.

141. The customs, policies and practices of Defendant Fulton, as Elections Supervisor for Defendant County, represent official custom, policy or practice of Defendant County and Defendant Board.

142. Defendant Fulton has the authority to establish customs, policies and practices for Defendant County with respect to enforcing Georgia electioneering

laws at the Courthouse polling location and all other polling locations in Defendant County.

143.   Defendant Fulton deliberately violated and will continue to deliberately violate the constitutional rights of Mr. Cobb and all registered voters in Defendant County through an unlawful custom, policy or practice, her own conduct, and by directing the agents, employees and volunteers of Defendant County and Defendant Board to engage in the same or similar conduct.

144.   The customs, policies and practices of Defendants Burney, Camp, Hendricks, Landis-Davis and Lawrence, as members of Defendant Board represent official custom, policy or practice of Defendant County and Defendant Board.

145.   Defendants Burney, Camp, Hendricks, Landis-Davis and Lawrence, as members of Defendant Board have the authority to establish customs, policies and practice for Defendant County policy with respect to enforcing Georgia electioneering laws at the Courthouse polling location and all other polling locations in Defendant County.

146.   Defendants Burney, Camp, Hendricks, Landis-Davis and Lawrence deliberately violated and will continue to deliberately violate the constitutional rights of Mr. Cobb and all registered voters in Defendant County through an unlawful custom, policy or practice, their own conduct, and by directing the

agents, employees and volunteers of Defendant County and Defendant Board to engage in the same or similar conduct.

147.   The customs, policies and practices regarding Georgia electioneering laws enforced by Defendant Bowen, as Voter Registration Clerk for Defendant County, represent official custom, policy or practice of Defendant County and Defendant Board.

148.   The customs, policies and practices regarding Georgia electioneering laws announced by Defendant Tallon, as Director of Communications and Community Relations for the Douglas County Board of Commissioners, represent official custom, policy or practice of Defendant County and Defendant Board.

149.   County liability may be imposed for the single decision by a policymaker.   Further, if the decision to adopt a particular course of action is directed by those who establish governmental policy, the municipality is equally responsible.

150.   The acts of Defendant Fulton represent Defendant County's official custom, policy or practice with respect to enforcing Georgia electioneering laws.

151.   The acts of Defendants Burney, Camp, Hendricks, Landis-Davis and Lawrence represent Defendant County's official custom, policy or practice with respect to enforcing Georgia electioneering laws.

152.   The acts of Defendant Bowen represent Defendant County's official custom, policy or practice with respect to enforcing Georgia electioneering laws.

153.   The acts of Defendant Tallon represent Defendant County's official custom, policy or practice with respect to enforcing Georgia electioneering laws.

154.   These constitutional violations constitute serious harm.

155.   The need to implement constitutional policies and procedures, as well as properly train, supervise, monitor and otherwise oversee poll location employees on the First Amendment and electioneering in the polling locations is so obvious, and the failure to properly do so is likely to result in the violation of rights, that each Defendant reasonably can be said to be deliberately indifferent to the ongoing violation of the rights of Mr. Cobb and all registered voters in Defendant County.

WHEREFORE, Plaintiff demands judgment against Defendant Douglas County and Defendant Douglas County Board of Elections and Registration for compensatory damages, equitable relief, plus costs and attorneys' fees, and such any and all further relief as this Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that a jury be empanelled to determine all issues of fact and that the Court:

a.     Declare that by announcing and enforcing a custom, policy or practice of banning all persons from wearing hats, clothing and other personal items referring to the NRA in all polling locations in Defendant County, Defendants violated the First and Fourteenth Amendments by improperly and discriminatory enforcing, and threatening to continue to improperly enforce, Georgia electioneering laws against voters including Plaintiff.

b.     Enjoin Defendants and any other employee or agent acting on behalf of Defendants, from enforcing the custom, policy or practice against voters including Plaintiff.

c.     Order Defendants Fulton, Burney, Camp, Hendricks, Landis-Davis and Lawrence to create and publish objective classifications, rules and/or principles to ensure that Georgia electioneering laws are enforced impartially and uniformly within Douglas County and consistently with the United States.

d.     Order Defendants Fulton, Burney, Camp, Hendricks, Landis-Davis and Lawrence to provide additional training to election workers to ensure that the

enforcement of Georgia electioneering laws within Defendant County is uniform and impartial and does not violate the United States Constitution.

e.      Award reasonable attorneys' fees, litigation expenses and costs, pursuant to 42 U.S.C. § 1988 and other applicable law, and grant any and all further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a jury trial.

Respectfully submitted this 8th day of December 2014.

Southeastern Legal Foundation, Inc.

By:   /s/ Shannon L. Goessling
Shannon L. Goessling
Georgia Bar No. 298951
Kimberly S. Hermann
Georgia Bar No. 646473
2255 Sewell Mill Road
Suite 320
Marietta, Georgia 30062
(770) 977-2131
(770) 977-2134 (Fax)

*Attorneys for Plaintiff Bundy Cobb*